MORRIS LAW GROUP
Ryan M. Lower, No. 9108
Email:  rml@morrislawgroup.com
Raleigh C. Thompson, No. 11296
Email:  rct@morrislawgroup.com
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada  89101
Telephone:  (702) 474-9400

RILEY WARNOCK AND JACOBSON, PLC
Timothy L. Warnock (*pro hac vice*)
Email: TWarnock@rwjplc.com
John R. Jacobson (*pro hac vice* )
Email: JJacobson@rwjplc.com
1906 West End Ave.
Nashville, TN  37203
Telephone:  (615) 320-3700

Attorneys for
Defendant/Counterclaim Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| CAESARS ENTERTAINMENT OPERATING COMPANY, INC., CAESARS ENTERTAINMENT CORP., and CAESARS ENTERPRISE SERVICES LLC,<br><br>Plaintiffs,<br>v.<br><br>EMARKER, LLC,<br><br>Defendant. | Case No. 2:15-cv-02214-JAD-VCF<br><br>**DEFENDANT / COUNTERCLAIM PLAINTIFF'S RESPONSE IN OPPOSITION TO PLAINTIFFS' / COUNTERCLAIM DEFENDANTS' MOTION FOR PROTECTIVE ORDER** |

## I.    INTRODUCTION

Caesars' Motion for Protective Order asks this Court to require a hyper-technical "identification" of trade secrets before discovery can commence.  This Court should deny the motion.

In short, this Court does not require such an "identification" threshold. Even if it did, eMarker, LLC ("eMarker") has already adequately identified the alleged trade secrets at issue. Indeed, Caesars possesses eMarker's three documents at issue and has already shared the information in those documents with non-parties. In addition, eMarker has requested in discovery specific *Caesars's* documents that eMarker believes should reveal Caesars's misappropriation, but Caesars refuses to produce those documents. Thus, the notion that Caesars has not been "put on notice" of the claims against it or cannot determine what is "relevant" for discovery is not accurate.

Further, even assuming, *arguendo,* that none of eMarker's information compromises trade secrets—which is not the case—eMarker would still be entitled to discovery related to its other causes of action, including, for instance, breach of contract. Caesars, however, has neither produced a single document in discovery nor provided a meaningful response to any of eMarker's requests and states that it will not do so unless eMarker complies with Caesars's "identification" threshold.

In the end, Caesars—the *Plaintiffs* in this case—has moved this Court for a radical reimagining of discovery with no legitimate basis to do so. For these many reasons, its Motion should be denied.

## II.     FACTS

### A.     The parties are well aware of the information at issue.

eMarker has alleged as follows:

17.     Relying on Counter-Defendants' assurances regarding the confidential treatment of the documents and information exchanged, eMarker continued to provide information and documentation to Caesars' executives for consideration and evaluation of the eMarker system throughout this sales process. Among the many confidential documents provided both electronically and in hard copy were, for example, (a) versions

2

of the client and server requirements sheets for the "eMarker Central Technical Guide" (hereinafter "CTG"); (b) versions of the "eMarker Central Operator Guide" (hereinafter "COG"); and (c) versions of the "eMarker Mobile Operator Guide" (hereinafter "MOG").

18.     Each page of the CTG, COG, and MOG also contained the following restrictive language:

> The information in this Guide constitutes the proprietary, confidential trade secrets of eMarker, LLC, and its use and disclosure are strictly limited to those employees of the casino having a need to access the Guide and who are bound to maintain the trade secret status of the Guide.

(Doc. 9, Countercl., ¶¶ 17-18). eMarker has likewise identified these same documents—the CTG, COG, and MOG—in its discovery responses. (*See* Doc. 28, Declaration of Todd Gregorian ("Gregorian Decl.") at Ex. 4, Interrog. No. 1). Caesars has also explicitly acknowledged that these same three documents are at issue. (Doc. 28, Memo. Supp. Mot. Prot. Order, p. 4 n.3).

**B.      eMarker has identified the alleged wrongdoing at issue.**

eMarker has also alleged:

25.     In a jurisdictional deposition in the Tennessee action, Mr. Behrman testified that at some point after eMarker provided Counter-Defendants with its confidential trade secret information Counter-Defendants asked three outside vendors to offer an alternative to a paper-marker system, i.e. an electronic marker system.

26.     Mr. Behrman further testified that he gave two of these three vendors a "manual" or "document" that Counter-Defendants had compiled.

27.     Mr. Behrman further testified that Counter-Defendants have also assembled an internal team comprised of a "large number" of individuals with different properties under the Caesars' umbrella who have also been supplied with this "manual" or "document."

3

28. Counter-Defendants have refused to provide a copy of this "manual" or "document" to eMarker. Upon information and belief, Counter-Defendants used eMarker's confidential trade-secret information to develop this "manual" or "document." Counter-Defendants would not have had the capacity to develop, or have a third-party develop, this "manual" or "document" or an electronic marker system without misappropriating eMarker's confidential documents and information.

29. When asked whether Caesars has used eMarker's proprietary information in its efforts to develop an alternative to a paper marker system, Mr. Behrman stated that he could not recall:

> Q. What information have you provided to Global Payment Services [one of the third-party vendors with whom Caesars has engaged] in connection with your exploratory work with them regarding another approach to marker issuance?
>
> A. Some of our business requirements of what we would like to see in a product.
>
> Q. Have you provided any of the materials that Thompson Patterson and eMarker provided to Caesars?
>
> A. **Not that I recall.**
> ...

**(Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing (under New Jersey law))**

33. As noted above, the NDA required Counter-Defendants to, among other things, keep confidential the information provided in connection with the contemplated transaction and only provide such information to those individuals for purposes of pursuing a business deal with eMarker.

34. The NDA also required Plaintiffs to return such information when the discussions between the parties ended.

35. The NDA also specifically recognized that information eMarker provided to Counter-Defendants was proprietary to eMarker and Counter-Defendants would not use such information.
...

37.     Upon information and belief, Counter-Defendants have violated the NDA by, among other things, not abiding by the confidentiality provisions prior to February 2014, by not returning the information in either February 2014 or earlier, as required by the NDA, and by using this information to, among other things, create a document or manual to distribute to Caesars' employees and third-party competitors of eMarker to assist Counter-Defendants and third-party vendors in developing an electronic marker system identical to eMarker's system that would compete with eMarker's system.

(*See* Counterclaim, ¶¶ 25-29, 33-35, 37).

eMarker has specifically requested Caesars's "document" or "manual" in discovery.  (Declaration of Tim L. Warnock ("Warnock Decl."), at Exhibit A at Req. Prod. No. 4).  Thus, in its discovery requests, eMarker has used Caesars's own description of the written material that Caesars admits disseminating.  (*Id.*).  As such, the parties know precisely the documents at issue.

### III.    ARGUMENT

**A.    This Court does not require Caesars's hyper-technical "identification" of trade secrets before discovery can begin.**

This Court has rejected similar requests to impose a threshold requirement that a party identify trade secrets with hyper-technical specificity before discovery is permitted.  Indeed, in *Glob. Advanced Metals USA, Inc. v. Kemet Blue Powder Corp.*, No. 3:11-CV-00793-RCJ, 2012 WL 3884939, at *7 (D. Nev. Sept. 6, 2012), this Court upheld the Magistrate Judge's ruling denying a request that plaintiff's trade secrets be "identified" prior to discovery.  The Court favorably cited the Magistrate Judge's holding "that a listing of every trade secret would draw an objection from Defendant that they must be narrowed, leading to additional discovery disputes and delays, and that a protective order against disclosure would protect Defendant's interests."  *Id.*

Such, of course, appears to be exactly Caesars's plan in this case: as noted above, although Caesars is well aware of the three documents at issue, Caesars has asked eMarker to highlight words within these documents that it believes to be trade secret. (*See* Warnock Decl., ¶ 3). eMarker presumes that, even if it did so, Caesars would continue to claim a lack of understanding of the issues in the case and would demand further specification, while continuing to refuse to produce the Caesars "document" or "manual" that was specifically identified as a pertinent document in this dispute as far back as September 2015.

Otherwise, in its Motion, Caesars expends little effort attempting to distinguish cases that hold that identification is ***not*** necessary. Instead, Caesars simply states that those cases involve situations in which a "defendant secretly took files and plaintiff does not know what is missing." (Doc. 28, Memo. Supp. Mot. Prot. Order, p. 10).

That description is inaccurate. *Nike, Inc. v. Enter Play Sports, Inc.*, 305 F.R.D. 642, 646 (D. Or. 2015)—referenced by eMarker in the Discovery Plan and Scheduling Order, (*see* Doc. 27, ¶ 3)—involves facts very similar to those at issue here: plaintiff entered into an NDA with defendant for purposes of engaging in a business partnership. The defendant then allegedly took proprietary information and attempted to patent a product built using that confidential information. The court noted that plaintiff's identification of its trade secrets was "sufficient...to permit discovery to proceed:"

> The Court notes that [defendant] answered the Complaint. [Defendant] did not move under the Federal Rules of Civil Procedure to dismiss the Complaint for failure to state a claim under Rule 12(b)(6) and did not move, or alternatively move, for a more definite statement under Rule 12(e). Further, [defendant] asserted in its first counterclaim that [plaintiff]'s alleged trade secrets either were not disclosed in [defendant]'s

6

patent Applications or, to the extent they were, then they were not subject to the protections of the NDA based on the NDA's express exclusions. [Plaintiff]'s claimed trade secrets must have been sufficiently clear to [defendant] to permit [defendant] to make these assertions.

*Id.*

Likewise, here, Caesars did not move to dismiss a number of eMarker's claims, including the claim for violation of certain trade secret statutes. (*See* Doc. 22). Caesars also did not move for a more definite statement of eMarker's Counterclaim related to eMarker's trade secrets. And, indeed, Caesars specifically referenced the documents containing the trade secrets at issue in its Motion for Protective Order. (Doc. 28, p. 4 n.3). Thus, Caesars appears well aware of the information at stake.

Finally, the Court in *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 305 F.R.D. 630, 641 (D. Or.), *reconsideration denied*, 104 F. Supp. 3d 1150 (D. Or. 2015) detailed the policy considerations behind refraining from requiring identification of trade secrets prior to discovery. The Court noted that a party "has a broad right to discovery," and reasoned that requiring a party to "identify its trade secrets without first knowing which have been misappropriated" would place the party "in somewhat of a 'Catch–22.' " *Id.* (internal quotations and citations omitted).

Here, as an initial matter, if Caesars simply produced the Caesars "document" or "manual" specified in the Counterclaim, eMarker could very easily identify what trade secret information from within the CTG, COG, and MOG Caesars has misappropriated in its creation of this "document" or "manual."

Further, the cases cited by Caesars, which purportedly support a threshold "identification" of trade secrets, do not address situations such as the one here in which eMarker has specifically identified three documents which contain the trade secret information at issue. In the cases

1  Caesars cites in support, the references to the trade secrets at issue were far
2  more "general" or "generic;" for instance, a plaintiff stated that a defendant
3  had "knowledge of technology and designs." *Switch Commc'ns Grp. v.*
4  *Ballard*, No. 2:11-CV-00285-KJD, 2012 WL 2342929, at *2 (D. Nev. June 19,
5  2012); *see also Vesta Corp. v. Amdocs Mgmt. Ltd.*, No. 3:14-CV-1142-HZ, 2015
6  WL 7720497, at *8 (D. Or. Nov. 30, 2015) (describing trade secret
7  descriptions as "broadly stated," "lack[ing] particularity," "too general and
8  generic" and only revealing "end results" of the trade secrets themselves);
9  *Porous Media Corp. v. Midland Brake Inc.*, 187 F.R.D. 598, 600 (D. Minn. 1999)
10 (generalized statement referencing, among other things, "[m]anufacturing
11 process information").  Or, else, the plaintiffs' attempts at identification of
12 trade secrets made reference to "thirty-two other documents, documents
13 which plaintiffs have not disclosed." *BioD, LLC v. Amnio Tech., LLC*, No.
14 2:13-CV-1670-HRH, 2014 WL 3864658, at *3 (D. Ariz. Aug. 6, 2014).
15         If eMarker's only identification of its trade secrets consisted of,
16 for example, "knowledge of an electronic marker system" or if eMarker had
17 vaguely referred to other documents that had not been disclosed, then
18 these cases might arguably be applicable.  But, instead, here, eMarker has
19 been sufficiently specific to put Caesars "on notice."
20         Finally, regardless of the Court's determination of this issue,
21 Caesars should have already provided legitimate responses in discovery, as
22 eMarker has a number of other claims in this lawsuit other than a claim for
23 violation of various trade secrets statutes.  Caesars, however, has refused to
24 provide any substantive responses or even a single document in discovery
25 related to those claims.  (*See* Warnock Decl. at Ex. A).
26         For instance, eMarker's claim for breach of contract does not
27 involve the identification of trade secrets and explicitly alleges that the
28 creation of Caesars's "document" or "manual" was a breach of contract.  (*See*

8

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

Doc. 9, Countercl., ¶¶ 25-29, 37).  As a case cited by Caesars explicitly provides, (*see* Doc. 28, Memo. Supp. Mot. Prot. Order, p. 7), in situations such as this one when one party moves for "identification" of trade secrets, "only that portion [of discovery] which implicates their trade secrets [should be suspended].  Discovery should proceed unhindered on the other counts." *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001).  eMarker is entitled to immediate discovery responses from Caesars related to its other causes of action, which would include, at the very least, the "document" or "manual" Caesars created using eMarker's information.

      **B.**    **Caesars's policy arguments related to the necessity of trade secret "identification" fail.**

Caesars does not attempt to provide valid support for its arguments that (a) eMarker has only provided "generalized allegations of wrongdoing"; or (b) eMarker might "mold" its trade secrets to whatever information eMarker receives in discovery, because, frankly, Caesars apparently does not believe these arguments itself.  (*See* Doc. 28, pp. 8-10).

First, eMarker's allegations are exactly the opposite of "generalized allegations of wrongdoing."  As noted above, eMarker has alleged not only the specific act of misappropriation but also an actual document that Caesars created that eMarker believes reflects that misappropriation.  (*See* Counterclaim, ¶¶ 25-29).  Thus, Caesars is on notice and can respond to eMarker's discovery requests.

Further, Caesars failed to offer even a suggestion as to how eMarker could "mold" its trade secrets to what eMarker found in discovery when eMarker has already specifically identified three documents that eMarker claims contain its trade secret information.

Finally, Caesars argues that eMarker's "blanket" reference to its three guides is not enough to identify the trade secrets at issue to put Caesars on notice of eMarker's claim. Such an argument, again, is unavailing. As noted above, Caesars is well aware of the wrongdoing at issue and eMarker's allegations. Indeed, the only case Caesars cites in its Motion that involves "guides" or "manuals" is *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583-84 (7th Cir. 2002), which was a ruling *on a motion for summary judgment* and, thus, is not applicable whatsoever to this Motion for a Protective Order.

In the end, even if "identification" were necessary, eMarker has sufficiently identified the trade secrets at issue to put Caesars on notice of the claims against it. As this Court is well aware, a trade secret is defined as

> [I]nformation, including, without limitation, a formula, pattern, *compilation*, program, device, method, technique, product, system, process, design, prototype, procedure, computer programming instruction or code that:
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other persons who can obtain commercial or economic value from its disclosure or use; and
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

NRS 600A.030 (emphasis added).[1]

The trade secrets at issue in this case are compilations of information found in the CTG, COG, and MOG that were provided to Caesars by eMarker in connection with an agreement that Caesars would keep the documents and information confidential and only use the

---

[1] The Tennessee and New Jersey trade secret statutes are similar. *See* Tenn. Code Ann. § 47-25-1701, et. seq.; N.J. Stat. Ann. § 56:15-2 et seq.

documents and information in connection with pursuing a business deal between Caesars and eMarker. (*See* Doc. 9, ¶¶ 11-17).

## IV.  CONCLUSION

For the reasons detailed above, Caesars' Motion should be denied.

MORRIS LAW GROUP

By   /s/Raleigh Thompson
Ryan M. Lower, No. 9108
Raleigh C. Thompson, No. 11296
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada  89101

RILEY WARNOCK AND
 JACOBSON, PLC
Timothy L. Warnock (*pro hac vice*)
John R. Jacobson (*pro hac vice*)
1906 West End Ave.
Nashville, TN  37203

Attorneys for
Defendant/Counterclaim Plaintiff

11

# CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b) and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of MORRIS LAW GROUP, and that the following document was served via electronic service: **DEFENDANT / COUNTERCLAIM PLAINTIFF'S RESPONSE IN OPPOSITION TO PLAINTIFFS' / COUNTERCLAIM DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

TO:
Michael N. Feder
DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210
Email: mfeder@dickinson-wright.com

Attorney for Plaintiffs

I further certify that I am familiar with the firm's practice of collection and processing documents for mailing; that in accordance therewith, I caused the above-named document to be deposited with the U.S. Postal Service at Las Vegas, Nevada, in a sealed envelope, with first class postage prepaid, on the date and to the addressee(s) shown below:

Jedediah Wakefield
Todd Gregorian
Annasara Purcell
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104

Attorneys for Plaintiffs

DATED this 18th day of April, 2016.

By /s/Fiona Ingalls